**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

EX-BOYFRIEND, LLC., (dba Boredwalk)

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED
ON SCHEDULE A HERETO.

    Defendants.

Civil Action No. 1:26-cv-1765

**COMPLAINT**

Plaintiff, Ex-Boyfriend, LLC dba Boredwalk (hereinafter referred to as "Plaintiff" or "") by and through its undersigned attorneys, hereby sues Defendants as set forth in Schedule A[1] and alleges the following:

**INTRODUCTION**

1. This action has been filed by Plaintiff in attempt to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use that same unauthorized and unlicensed products which infringe Plaintiff's copyrights (collectively, the "Infringing

---

[1] Plaintiffs intend to file a motion to file Schedule A under seal.

Products"). True and correct screenshots of the active e-commerce stores operating under the seller aliases and selling Infringing Products are shown in **Exhibit B** attached hereto.

2.    Boredwalk is an artist owned small business that creates comedy content and a fund and diverse selection of gifts (including books, towels, and card sets) and apparel for adults and children.  has created and utilizes several registered copyrights in the sale of their products through their e-commerce store, whose registrations are depicted in **Exhibit A (collectively the "Works")** and **Table 1** below:

**Table 1**

| Registration Number | Title of Work(s) |
|---|---|
| VAu001575694 | *We're All In This Together Like Hostages* |
| TX0008787715 | *Ex-Boyfriend LLC Design Catalog (2018–2019)* |
| | *Catnip Freakout* |
| | *What A Time To Be Alive And Anxious* |
| | *Nolite Te Bastardes Carborundorum* |
| | *A Woman's Place Is In The White House* |
| | *Hell-Bent Feminist She-Devil* |
| | *Understand More Fear Less* |
| | *Living My Okayest Life* |
| | *Support Your Local Library* |
| VAu001484430 | *Ban The Fascists Save The Books* |
| VAu001391782 | *It Will All Work Out In The End* |
| VAu001462506 | *Exhausted By Existence* |

2

| TXu002446078 | *Bloodthirsty And Bewitched: An Activity Book for Strange and Unusual* |
| | *Home Is Where The Heart Is Buried Under A Floorboard* |
| VAu001508131 | *Try Optimistic Nihilism Today* |
| TX0008717725 | *Boredwalk Design Zine* |
| | *MAYBE TOMORROW SATAN* |
| | *Someday We'll All Be Dead* |
| | *I Wish I Was Full Of Donuts Instead Of Existential Dread* |

3.     Boredwalk's Works have been displayed on its website, https://www.boredwalk.com/pages/about-us.

4.     Plaintiff acquired all rights, title, and interest to the Works including all copyrights therein, either through sole creation or written transfer.

**JURISDICTION AND VENUE**

5.     This Court has original subject matter jurisdiction over the claims in this action arising under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*., under 28 U.S.C. §§ 1331 and 1338(a)-(b).

6.     Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Texas and this district, through at least the internet-based e-commerce stores accessible in Texas.

7.     Defendants are further subject to personal jurisdiction in this district because each Defendant directly targets consumers in the United States, including in Texas, through at least

the fully interactive commercial Internet stores operating under the Defendant domain names and/or the Online Marketplace Accounts identified in **Schedule A** attached hereto (collectively, the "Defendants" or "Defendant Internet Stores"). Specifically, the Defendants are reaching out to do business with Texas residents by operating one or more commercial, interactive Internet Stores through which Texas residents can purchase products infringing Plaintiff's copyrighted Works. Each of the Defendants has targeted sales from Texas residents by operating online stores that offer shipping to the United States, including Texas, accepts payment in United States Dollars, and on information and belief, has sold infringing products to Texas residents. Each of the Defendants are committing tortious and illegal activities directed towards the state of Texas and causing substantial injury in Texas, and Plaintiff's claims arise out of those activities.

8.    Alternatively, Defendants are subject to personal jurisdiction in this district under Fed. R. Civ. P. 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

9.    Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants and their agents are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

10.    Venue in this judicial district is otherwise proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not a resident in the United States and therefore there is no district in which any action may otherwise be brought.

## PARTIES

11.    Boredwalk is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 9120 Norwalk Blvd,

4

Santa Fe Springs, CA 90670.

12.    Boredwalk has the rights to, *inter alia*, publicly display, reproduce, and create derivative works of the Works and to authorize others to do the same.

13.    Defendants have the capacity to be sued under Fed. R. Civ. P. 17(b).

14.    The Defendants in **Schedule A** (collectively, "Defendants") are individuals and business entities who, upon information and belief, reside primarily in foreign jurisdictions. Defendants conduct business throughout the United States, including within Texas and in this District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Texas, and has, upon information and belief, sold, offered for sale, and continues to sell, products featuring the Works to consumers within the United States and this District.

15.    Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Texas through the advertisement, offer to sell, sale, and/or shipment of infringing goods to residents in the State.

16.    Upon information and belief, Defendants may have engaged in fraudulent conduct providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell infringing products.

17.    Upon information and belief, Defendants will likely continue to sell and offer for sale products featuring Plaintiff's intellectual property, namely products featuring in whole, or in part, the Works, unless preliminarily and permanently enjoined.

18.    Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

5

19.     Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Texas and causing Plaintiff harm and damage within this jurisdiction.

20.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

21.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to exploit and license such intellectual property rights.

22.     Upon information and belief, at all times relevant hereto, each of the Defendants were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants, and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment; and actively participated in, subsequently ratified, and/or adopted each and all of the acts or conduct alleged, with full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

**JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

23.     In the past, Plaintiff was able to police infringements of its copyrighted Works against identifiable infringers. The rise of online retailing, coupled with the ability of e-commerce sites to hide their identities, has made it nearly impossible for policing actions to be undertaken. Plaintiff has attempted takedown procedures to remove the infringing products, but these efforts have proved to be unavailing as numerous additional seller profiles under new seller aliases continue to appear selling the same infringing products. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed plaintiffs and its ability to police its copyrights against the hundreds of anonymous defendants which are selling illegal counterfeits

at prices substantially below the cost of licensing the original and earning revenues that rightfully belong to Plaintiff.

24.    The evidence supporting Plaintiff's claims proves a cooperative counterfeiting network using fake e-commerce store fronts designed to appear to be selling authorized products. To be able to offer the counterfeit products for sale substantially below the cost of a license to use the copyrighted Works, while still being able to turn a profit after absorbing the cost of manufacturing, printing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As Homeland Security's recent report confirms, counterfeiters act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate artists while generating huge profits for the illegal counterfeiting network:

> Historically, many counterfeits were distributed through swap meets and individual sellers located on street corners. **Today, counterfeits are being trafficked through vast e-commerce supply chains in concert with marketing, sales, and distribution networks**. The ability of e-commerce platforms to aggregate information and reduce transportation and search costs for consumers provides a big advantage over brick-and-mortar retailers. Because of this, sellers on digital platforms have consumer visibility well beyond the seller's natural geographical sales area.

> The impact of counterfeit and pirated goods is broader than just unfair competition. Law enforcement officials have uncovered intricate links between the sale of counterfeit goods and transnational organized crime. **A study by the Better Business Bureau notes that the financial operations supporting counterfeit goods typically require central coordination**, making these activities attractive for organized crime, with groups such as the Mafia and the Japanese Yakuza heavily involved. Criminal organizations use coerced and child labor to manufacture and sell counterfeit goods. In some cases, the proceeds from counterfeit sales may be supporting terrorism and dictatorships throughout the world.

> . . .

> Selling counterfeit and pirated goods through e-commerce is a highly profitable activity: production costs are low, millions of potential customers are available

online, transactions are convenient, and listing on well-branded e-commerce platforms provides an air of legitimacy.

*See* Department of Homeland Security, Combating Trafficking in Counterfeit and Pirated Goods, Jan. 24, 2020, (*https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods*), at 10, 19 (emphasis added) attached hereto as **Exhibit C**.

25.     The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants use aliases to avoid liability by going to great lengths to conceal both their identities as well as the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables counterfeiters to stymie authorities:

> A counterfeiter seeking to distribute fake products will typically set up one or more accounts on online third-party marketplaces. The ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders. Rapid proliferation also allows counterfeiters to hop from one profile to the next even if the original site is taken down or blocked. On these sites, online counterfeiters can misrepresent products by posting pictures of authentic goods while simultaneously selling and shipping counterfeit versions.
> . . .
>
> Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors.

*Id*. at 5, 11, 12.

26.     Defendants also engaged in communications with each other to carry out infringing activities and evade liability. Specifically, Plaintiff is aware of websites such as *QQ.com*, *Sellerdefense.cn*, and others which sellers like the ones named here advise each other of newly filed copyright infringement cases involving the Infringing Products and collectively carry out

8

tactics to evade liability for its wrongs.

27.     Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and loss of control over its reputation and goodwill in connection with the copyrighted Works and the products it is featured on. The rise of e-commerce as a method of supplying goods to the public exposes brand holders and creators that make significant investments in their products to significant harm from counterfeiters. *See Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (**Exhibit C**) at 4, 8, 11.

28.     Not only are the creators and copyright holders harmed, but the public is also harmed as well. *See e.g., id*. at 3, 4.

29.     Plaintiffs' investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule A shows the use of store names by the Defendant Internet Stores that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine copies of Plaintiff's Works while selling inferior imitations of Plaintiffs' Works. The Defendant Internet Stores also share unique identifiers, such as design elements, SEO tactics like keyword stuffing, and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs copyrighted Works, as well as to protect unknowing consumers from purchasing unauthorized

copies and derivatives of the Copyrighted Works over the internet.

30.     Thus, Plaintiff brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. § 501, and for all the remedies available under the Copyright Act.

31.     Joinder of all Defendants is permissible under Fed. R. Civ. P. 20(a)(2), which permits joinder of persons in an action where any right to relief is asserted against defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in this action. As stated above, joinder is proper here based on the logical relationship between the Defendants, the seller profiles, and the evidence of coordination amongst the sellers identified.

32.     Each Defendant uses non-descriptive seller aliases making it difficult or impossible to identify their true identity, but upon information and belief, the sellers are acting simultaneously as part of a network of infringement to violate Plaintiff's rights.

33.     Joinder of the multiple Defendants is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

34.     Joinder of the multiple Defendants serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

35.     This court has jurisdiction over the multiple Defendants. Venue is proper in this

court for this dispute involving the multiple Defendants.

36. Plaintiff's claims against the multiple Defendants are all transactionally and logically related. All Defendants are engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions. All Defendants undertake efforts to conceal their true identities from Plaintiff to avoid accountability.

37. All Defendants are engaging in the same infringing activities, i.e., displaying and offering Infringing Products for sale on Amazon, eBay, Etsy, Tik Tok Shop, and Temu at the same time and therefore are undeniably involved in the same series of transactions or occurrences giving rise to this claim at the same time.

38. Based on the Infringing Products quality and similarities in printing, Plaintiff has reason to believe that the products are sourced from the same vendor, manufacturer, or printing facility. Additionally, the sellers identified in Schedule A self-identify its location either in the same city in China or cities within close proximity to each other. Further, the product listings feature the same photographs and advertisements, further supporting that all Defendants named in Schedule A obtain the Infringing Products from a common source.

39. Defendants are using infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce stores and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

40. Defendants, through the sale and offer to sell infringing products, are directly and unfairly competing with Plaintiff's economic interests in the state of Texas and causing Plaintiff harm and damage within this jurisdiction.

41.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**CLAIMS RELATED TO PLAINTIFF'S COPYRIGHTED WORKS**

42.     Plaintiff owns all rights in the Copyrighted Works depicted in **Exhibit A**. Plaintiff complied in all respects with the Copyright Act, 17 U.S.C. § 101, *et. seq*.

43.     Prior to the acts complained of herein, Plaintiff widely publicly displayed and disseminated the copyrighted Works. The success of the copyrighted Works has resulted in significant unauthorized copying. Defendants create unauthorized copies, reproductions, or derivatives of the copyrighted Works and print the copy on various products, such as various apparel, namely t-shirts. Each defendant targets consumers in the United States, including the State of Texas, and offered to sell and, on information and belief, sold and continues to sell Infringing Products that violate Plaintiff's intellectual property rights to consumers throughout the United States, including Texas.

44.     Defendants, and each of them, have willfully copied, reproduced, distributed, sold, and/or offered for sale Plaintiff's copyrighted Works for financial benefit by, without limitation, reproducing the copyrighted Works online and/or products bearing copies of the Works for commercial benefit, including without limitation, through Defendant Internet Stores. Defendants are using identical copies of Plaintiff's Works. True and correct copies and screen captures of Defendants' unauthorized use are depicted in **Exhibit B.**

45.     The Defendant Internet Stores intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiffs from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations. Through

their operation of the Defendant Internet Stores, Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit products as alleged, often time as partners, co-conspirators, and/or suppliers. Upon information and belief, Defendants are interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products.

46.     Defendants go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Defendants also appear to intentionally omit accurate contact information when registering their respective stores. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive operation, and to avoid being shut down.

47.     The Infringing Products for sale on the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendants Internet Stores also include notable common features, including the use of the same store name registration patterns, similar SEO tactics such as keyword stuffing, and similar titles for the products.

48.     Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the Internet, (ii) causing an overall degradation of the value associated with the images,

and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

49.    As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear unknowing to customers to be authorized online retailer, outlet stores, or wholesalers selling genuine productions of the Works. Many of the Defendant Internet Stores look sophisticated and accept payment in US Dollars via credit or debit cards, including through payment services like Paypal, Payoneer, among others Defendant Internet Stores include design elements that make it very difficult for consumers to distinguish such infringing sites from authorized seller websites.

50.    Upon information and belief, at all times relevant hereto, Defendants had full knowledge of Plaintiff's ownership of the copyrights in the Works, including its exclusive right to use and license such copyrighted Works, through Plaintiff's numerous e-commerce website, and/or through viewing the copyrighted Works on third-party websites.

51.    Defendants' use of the copyrighted Works, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their infringing goods, is without Plaintiff's consent or authorization.

52.    Defendants are engaging in the above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's intellectual property and reputation.

53.    Plaintiff has not in any way authorized Defendants, or any of them, to copy, reproduce, duplicate, disseminate, distribute, or create derivative works of the copyrighted Works.

54.    If Defendants' intentional infringing activities are not preliminarily and

14

permanently enjoined, Plaintiff and the consuming public will continue to be harmed.

55.    Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

56.    Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

57.    Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights by way of lost profits, loss of exclusivity, and lost value in the Copyrighted Works. The Defendants infringing activities have diminished Plaintiff's ability to market and sell its Copyrighted Works.

58.    Plaintiff should not have competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's Copyrighted Works.

59.    Plaintiff has no adequate remedy at law.

## CLAIM FOR RELIEF

### COUNT I - Copyright Infringement (17 U.S.C. § 106)

60.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61.    Plaintiff has complied in all respects with the Copyright Act.

62.    Under 17 U.S.C. § 106, Plaintiff has the exclusive rights to display the work publicly, reproduce, prepare derivative works, and distribute copies of the copyrighted Works, and to authorize others to do the same.

63.    Plaintiff alleges that Defendants, and each of them, accessed the copyrighted Works, including through the website https://www.boredwalk.com/pages/about-us. Access can be

further presumed given the identical copies of the copyrighted Works shown on the Infringing Products. The copyrighted Works and the Infringing Products are strikingly similar to the point that there can be no other alternative than that Defendants accessed the copyrighted Works.

64. Plaintiff alleges that Defendants, and each of them, infringed Plaintiff's exclusive copyrights by creating derivative works, copying, displaying, and/or distributing works to the public based upon Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 106, as seen, without limitation, in the screen captures depicted in **Exhibit B**.

65. Due to Defendants' infringing use as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not have realized but for their infringement of Plaintiff's rights in the copyrighted Works. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of its rights in the copyrighted Works in an amount to be established at trial.

66. Defendants' conduct constitutes willful and direct copyright infringement. The similarities between the copyrighted Works and infringing use further proves the willful and direct infringement by Defendants.

67. On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

68. Due to Defendants', and each of their acts of infringement, Plaintiff has actually and proximately suffered damages in an amount to be established at trial under 17 U.S.C. § 504.

69. The harm caused to Plaintiff is irreparable.

70. Plaintiff is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

71.    Plaintiff complied with registration requirements for the copyrighted Works before the commission of the infringement at issue and on that basis seeks statutory damages in an amount up to $150,000.00 per Defendant under the Copyright Act.

72.    Upon information and belief, Defendants', and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

**COUNT II - Vicarious and/or Contributory Copyright Infringement (17 U.S.C. § 501)**

73.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74.    On information and belief, Plaintiff alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Copyrighted Works as alleged hereinabove. Such conduct included, without limitation, creating derivative works, creating products which use Plaintiff's Artwork, and/or selling such derivative works and products and that that Defendants knew, or should have known, were not authorized to be published by Defendants.

75.    On information and belief, Plaintiff alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendants, and each of them, profited in connection with the Infringing Use, and were able to supervise the distribution, broadcast, and publication of the Infringing Use.

76.    By reason of the Defendants', and each of their, acts of contributory and vicarious

infringement as alleged above, Plaintiff has suffered general and special damages in an amount to be established at trial.

77.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not have realized but for their infringement of Plaintiff's rights in the Copyrighted Works. As such, Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Plaintiff rights in the Copyrighted Works, in an amount to be established at trial.

78.    On information and belief, Plaintiff alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional, and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000.00 per Defendant and/or a preclusion from asserting certain equitable and other defenses.

**COUNT III - Unfair Competition and Misappropriation (Texas Common Law)**

79.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

80.    Plaintiff has invested substantial time, labor, and resources in designing, producing, and marketing the copyrighted Works, including creating original product photographs depicting sculpture.

81.    Defendants have engaged in unfair competition by misappropriating Plantiff's efforts and goodwill and by suing Plantiff's product images of the copyrighted Works, often digitally altered through background removal or replacement, to promote identical or virtually identical goods for their own commercial benefit.

82.    Defendants' use of Plantiff's copyrighted Works and presentation of the goods in

their listings create the dales impression that their products originate from Plaintiff, are affiliated with plaintiff, or are approved or sponsored by Plaintiff, thereby diverting sales and goodwill.

83.    Defendant's actions constitute palming off, passing off, and commercial misappropriation under Texas common law. These wrongful acts include extra elements, misleading commercial presentation, diversion of goodwill, and exploitation of Plaintiff's reputation, beyond mere reproduction of copyrighted material, and therefore are not preempted by the Copyright Act.

84.    As direct and proximate result, Plaintiff has suffered loss of goodwill, market confusing, and diversion of sales and will continue to suffer such hard absent judicial relief.

85.    Plaintiff seeks injunctive relief prohibiting Defendant's unfair competition; disgorgement of Defendant's profits attributable to their misconduct; actual damages; corrective measures appropriate; and all further relief deemed just and proper under Texas law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows against all Defendants and with respect to each claim for relief:

a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 17 U.S.C.§ 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, affiliates, and/or all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell infringing goods; from infringing the Copyrighted Works; from using the Copyrighted Works, or any design similar thereto, in connection with the sale of any unauthorized goods; from using any reproduction, infringement, copy, or colorable imitation of the Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; and from otherwise unfairly competing with Plaintiff;

19

b.        Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using the Copyrighted Works;

c.        Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling foods bearing infringements of the Copyrighted Works;

d.        Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

e.        Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and

brand registry platform, any and all listings and associated images of goods bearing infringements of the Copyrighted Works via the ecommerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the Identification Numbers on Schedule "A" annexed hereto, and upon Plaintiff's request, any other listings and images of goods bearing infringements of the Work associated with any Identification Numbers linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing infringements of the Copyrighted Works;

f.        Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing the Work in its inventory, possession, custody, or control, and surrender those goods to Plaintiff;

g.        Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public;

h.        Entry of an Order requiring Defendants to account to and pay Plaintiff his actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504;

i.        Entry of an award, pursuant to 17 U.S.C. § 505, of Plaintiff's costs, disbursements, and reasonable attorneys' fees, associated with bringing this lawsuit;

j.        That Plaintiff be awarded its costs and attorneys' fees to the extent they are

available under the Copyright Act, 17 U.S.C. § 505;

k.    Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or ecommerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

l.    That a trust be entered over all Infringing Products, and all profits realized through the sales and distribution of said work;

m.    That Plaintiff be awarded pre-judgment interest as allowed by law;

n.    That Plaintiff be awarded the costs of this action; and

o.    That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Date: June 30, 2026            /s/ Thomas Tatonetti

Thomas Tatonetti
Tatonetti IP
569 77th Street
Brooklyn, NY 11209
(917) 684-2684
***Attorney for Plaintiff***